IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Case No. 3:09-bk-05337 |
| GREGORY SCOTT DAILY, | ) | Judge Marian F. Harrison |
| | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION FOR RESOLUTION OF**
**DISPUTE OVER ELECTION OF CHAPTER 11 TRUSTEE**

Auerbach Acquisition Associates, Inc. ("Auerbach"), for its *Motion for Resolution of Dispute over Election of Chapter 11 Trustee* (the "Motion"), states as follows:

On May 3, 2010, the Office of the United States Trustee, Region 8 ("UST"), filed its Report of Disputed Election of a Chapter 11 Trustee held April 29, 2010. (Doc. No. 611.) Auerbach hereby moves the Court, pursuant to Fed. R. Bankr. P. 2003(d)(2), for the entry of an order resolving the election dispute over which trustee nominated in the election should administer the estate of Debtor Gregory Scott Daily ("Daily"). As set forth below, Auerbach's motion should be granted because an extreme injustice has occurred: the Debtor was permitted to select his own trustee. Moreover, as described herein, the requested relief is narrowly tailored and resolves every concern that has been heretofore raised with this Court about the issue of voter eligibility.

**PROCEDURAL BACKGROUND**

On March 17, 2010, Auerbach filed an expedited motion for the appointment of a trustee to administer Daily's estate. (Doc. No. 540.) On March 29, 2010, a hearing on the motion was held, at the conclusion of which, this Court granted Auerbach's motion for a trustee due to, among other things, Daily's failure to confirm a plan pursuant to 11 U.S.C. § 1104(a)(3). On March 31, 2010, this Court entered an order requiring the

appointment of a trustee. (Doc. No. 558.) On April 2, 2010, Auerbach requested the election of a Chapter 11 Trustee pursuant to Rule 2007.1(b)(1). A meeting of creditors for the purpose of conducting the election of a trustee was scheduled for April 29, 2010. (Doc. No. 568.)

On April 9, 2010, Daily filed a motion to determine Auerbach's eligibility to vote to elect a Chapter 11 trustee. (Doc. No. 571.) Auerbach filed a response in which it argued, among other things, that it must be permitted to vote because Daily lacked standing to bring the Motion; Auerbach's claim was not in dispute because this Court had already ruled that it was allowed in this case; and Auerbach did not have a materially adverse interest because Auerbach had the same interest as all other unsecured creditors—to maximize Daily's bankruptcy estate and protect the integrity of its claim. (Doc. No. 589.) Following an April 27 hearing, on April 29, 2010, this Court ruled that Auerbach was not eligible to vote at the meeting of creditors and entered an order to that effect on May 4, 2010. (Doc. No. 614.)

On April 29, 2010, a meeting of creditors was held. At the hearing, two creditors were present: Daily's current and long-time personal counsel in the California state court action, Morgan Lewis & Bockius ("Morgan Lewis"), and Auerbach. The Debtor, Morgan Lewis, and the UST objected to Auerbach's eligibility to vote. Only Auerbach objected to Morgan Lewis's eligibility to vote. Morgan Lewis nominated and voted for Randal S. Mashburn; Auerbach nominated and voted for Jeffrey I. Golden, a disinterested panel trustee. No other nominations were made or votes were cast. (*See generally* Doc. No. 611 at 2-4.) On May 3, 2010, the UST filed its Report of Disputed Election. (Doc. No. 611.)

2

## ARGUMENT

As described below, when it came time for the trustee's office to appoint a trustee, Daily requested that Auerbach join in his request to the trustee's office that Mr. Mashburn be appointed to the case. Auerbach refused. Nevertheless, following Daily's request, the trustee's office did appoint Mr. Mashburn.[1]

At the April 27 hearing, Daily's long-time counsel, Morgan Lewis, admitted that the pleading it filed in support of Daily's motion to prevent Auerbach from voting in the trustee election was prepared for Morgan Lewis by Debtor's bankrutpcy counsel. At the April 29 election, Morgan Lewis was the only creditor to vote for Mr. Mashburn. Thus, the Debtor was able to select his own trustee.

Auerbach properly objected to Morgan Lewis's eligibility to vote at the election. Morgan Lewis is ineligible to vote and its vote should not be counted for five independent reasons. First, as stated on the record at the April 29 election, the representative of Morgan Lewis at the election did not have a written proxy to vote at the election, as required by Bankruptcy Rules 2006 and 2007.1.

Second, Morgan Lewis is ineligible to vote because it is an insider under 11 U.S.C. 702(a)(3) by virtue of its representation of, and close relationship with, Daily. *In*

---

[1] This Court has already been briefed on the many connections Mr. Mashburn's firm has, including (i) having previously represented the Debtor himself along with a group of friends of the Debtor involved in a securities transaction, (ii) presently representing an investment vehicle of a close friend of the Debtor, Jeff Gould, who is the trustee of the recipient of one of the Debtor's largest fraudulent transfers – in addition to having previously represented Mr. Gould himself personally, (iii) presently representing one of the largest creditors to the estate in other matters and who is in litigation with the estate through its insurance carrier, (iv) presently representing in other matters another large creditor aligned with the Debtor and whose claim is subject to a potential avoidance action, and (v) having actually filed in this case the proof of claim related to the highly contentious David Daily personal guaranty (David Daily is the Debtor's brother and another potential avoidance defendant).

3

*re Montagna*, 31 B.R. 10 (Bankr. Pa. 1983) (holding claim for attorney fees for services to debtor could not be voted in trustee election because such vote violated insider prohibition of 11 U.S.C. § 702(a)(3)), citing *Beale v. Snead*, 81 F.2d 970 (4th Cir. 1936) (holding creditor whose claim against debtor was for services rendered as attorney could not vote in election of trustee); *see In re Fortune Natural Resources Corp.*, 350 B.R. 693 (Bankr. E.D. La. 2006) (holding debtor's attorney was an "insider"); *In re Daddy's Money of Clearwater, Inc.*, 187 B.R. 750 (M.D. Fla. 1995) (same). Morgan Lewis' proof of claim plainly evidences that it is for attorney fees for services to debtor. (Claim No. 2.) Thus, each of these four cases are directly on point in demonstrating Morgan Lewis' ineligibility to vote.

Third, while the fact that Morgan Lewis' proof of claim is enough to preclude it from voting, Morgan Lewis has also itself acknowledged its insider status. Morgan Lewis is a creditor in the bankruptcy as a result of its being Daily's personal law firm, having represented him for eight years in the State Court litigation. In fact, Morgan Lewis admitted that it was serving as one of Debtor's counsel. Morgan Lewis filed a pleading supporting Debtor's motion to preclude Auerbach from voting. (Doc. No. 595.) At the April 27 hearing, Auerbach's counsel brought to the Court's attention the fact that the footer on Morgan Lewis's pleading demonstrated that the document was actually prepared by Debtor's bankruptcy counsel. In response to this revelation, Morgan Lewis stated on the record that it was "glad to acknowledge" that it did indeed file a pleading prepared for it by "another attorney for Mr. Daily." Thus, Morgan Lewis was not just an insider, but was participating in the Debtor's motion at the direction of Debtor's bankruptcy counsel.

4

Fourth, Morgan Lewis is ineligible to vote because it has priority creditor status and therefore an interest materially adverse to unsecured creditors under 11 U.S.C § 702(a)(2).  Having been retained and compensated post petition (*see* Doc. Nos. 14, 52), Morgan Lewis has priority creditor status. As a priority creditor, Morgan Lewis does not have the same interest as unsecured creditors in this case and should not be permitted to vote.  *In re NNLC Corp.,* 96 B.R. 7, 10 n.3-4 (Bankr. D. Conn. 1989) ("Only a creditor that holds an . . . unsecured claim that is not entitled to priority, that does not have an interest materially adverse to the interest of general unsecured creditors, and that is not an insider may vote for a trustee."), *quoting* H.R. Rep No. 595, 95th Cong., 1st Sess. 378 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 92-93 (1978) (emphasis added).[2]

Fifth, due to its admitted "financial," "emotional," and "professional" "investment" in the Debtor, Morgan Lewis conceded that it should not be permitted to vote at the election.  At the April 27 hearing, counsel for Morgan Lewis stated:

> I'm not here to argue today that we should be able to vote. . . .  I want the Court to understand I'm being candid, that we have a different interest as well.  We're counsel—Morgan Lewis is counsel to the Debtor, counsel on that appeal.  We certainly have an investment on whether that appeal continues both financial and I'm sure emotional, professional.  But at the end of the day, if there is an election conducted with proper observation of the restrictions on proxy solicitation contained in Rule 2007.1, we're happy to have the creditors who really do not have significant adverse interests of the nature of our's and Auerbach's.  We're glad to have them make the

---

[2] It is distressing to Auerbach that, while the trustee's office sought to preclude Auerbach from voting and objected at the election to Auerbach's vote, it took no action with regards to Morgan Lewis' vote despite these multiple grounds upon which to object to Morgan Lewis' vote. The representative of the trustee's office was in the courtroom when Morgan Lewis conceded its materially adverse status and yet the trustee's office made no objection to Morgan Lewis' vote --- not even based upon the lack of written proxy or Morgan Lewis' priority claim status. The Court is respectfully requested to consider this when evaluating the positions taken by the trustee's office, including the trustee office's decision to appoint as trustee the same candidate Daily lobbied for, despite his firm's connections to Daily himself.

5

<u>decision.</u> . . . We think that Auerbach should not be qualified to call for an election, or conduct…or to vote in an election. <u>And, if that argument also makes it impossible for us to do so, we're okay with that determination.</u>

Thus, on the basis of Morgan Lewis' own admission, there is no dispute that Morgan Lewis has an interest materially adverse to the interest of unsecured creditors in this case. By its own admission, Morgan Lewis is ineligible to vote under section 702(a)(2). To the contrary, Auerbach has no such adverse interest—Auerbach's interest is the same as all non-priority unsecured creditors: to maximize the estate and protect the integrity of its claim.

At the election, the only two parties that voted were Morgan Lewis and Auerbach. Therefore, notwithstanding Morgan Lewis' admission to this Court of its insider status, it nevertheless proceeded to vote. Also, notwithstanding its representation to this Court that it wanted "the creditors who really do not have significant adverse interests of the nature of [Morgan Lewis']" to "make the decision," *Id*, Morgan Lewis did the opposite. Morgan Lewis seized the opportunity presented by this Court's ruling on Auerbach's ability to vote and used it to vote for Daily's candidate. Thus, the effect of Daily's efforts was to enable himself to select his own trustee. This is an impermissible outcome as determined by controlling authority set forth below.

No debtor should be permitted to select, or even attempt to influence the selection of, his own trustee. *Sloan's Furriers v. Bradley*, 146 F.2d 757, 759 (6th Cir. 1945) ("[W]here a bankrupt attempts to influence the election of a trustee the choice will be disapproved regardless of the qualifications and personal integrity of the man chosen.") This *explicitly* includes a trustee whose election was secured by the vote of the debtor's attorney: "This has been held to include a trustee whose election was secured by the activity of the bankrupt's attorney." *Id., citing In re Rekersdres*, 108 F.

6

206 (S.D.N.Y. 1901); *In re Sitting*, 182 F. 917 (N.D.N.Y. 1910). This controlling authority is of special relevance to the instant case. Daily did not just "attempt to influence" the election, he determined the outcome and selected his own trustee through his attorney. Thus, Daily's "choice will be disapproved regardless of the qualifications and personal integrity of the man chosen." *Id.* Importantly, in the sixty-five years since *Sloan's Furrier* became law --- or even at any time before it became law for that matter, Auerbach is aware of *no case* in this circuit or any other that has ever held to the contrary. This is, of course, because exclusion of the debtor from the trustee selection process is one of the most basic bankruptcy principles.

Moreover, when such debtor uses subterfuge and attempts to participate in an election through the mask of a creditor, the issue is compounded—and that is precisely what Daily did. It is not disputed that Daily asked Morgan Lewis to participate in this motion and had his bankruptcy counsel draft Morgan Lewis's pleading for Morgan Lewis. Thus, using Morgan Lewis's position as a creditor, Daily was able to elect his own trustee. Accordingly, Auerbach respectfully requests the Court take into consideration these extenuating circumstances, as well as the matters raised in connection with the motion regarding Auerbach's eligibility to vote,[3] and order that Auerbach's vote be considered and Auerbach's candidate, panel trustee Jeffrey Golden, be appointed as trustee.

It is critical that Auerbach's vote be considered because, even if this Court were to disallow Morgan Lewis' vote, the Debtor will still have been permitted to select his own trustee if Auerbach's vote is not counted. This is for the following reasons. Prior to

---

[3] *See* Doc. Nos. 589, 591, 596, and 606, incorporated herein by reference.

Mr. Mashburn's appointment as trustee, Daily requested that the trustee's office appoint Mr. Mashburn. Daily also approached Auerbach and offered to stipulate to trustee appointment if Auerbach would join in his request to the trustee's office that Mr. Mashburn be appointed the trustee. Auerbach refused. Nevertheless, following Daily's designation that Mr. Mashburn was his candidate, the UST did appoint Mr. Mashburn. What is, therefore, beyond dispute is that (a) Daily was vocal in his desire that, of all the many off-panel trustee choices available, Mr. Mashburn be the selection and (b) thereafter Mr. Mashburn was selected. Auerbach can never know to what extent Daily's request played a role in the trustee's office's decision to appoint Daily's selection. However, as *Sloan's Furriers* instructs, that fact is irrelevant anyway. The holding of *Sloan's Furriers* is that a mere *attempt* by a debtor to influence trustee selection mandates his candidate's disapproval: ("[W]here a bankrupt <u>attempts</u> to influence the election of a trustee the choice will be disapproved regardless of the qualifications and personal integrity of the man chosen.") *Id.* (emphasis added). Thus, the inquiry is not whether the influence was successful because, of course, it is difficult to know what is in the minds of decision makers. Rather, the mere *attempt* by a debtor to influence the process requires that steps be taken to avoid the resulting cloud.

Daily's *attempt* to influence trustee selection was replayed in the election as well. When Auerbach called for an election, the Debtor engaged in subterfuge to enable himself to vote in the election through Morgan Lewis, and thereby elect Mr. Mashburn. Thus, in any scenario in which Auerbach's vote is not counted, the Debtor's attempt to influence both the appointment and election process will have gone unabated and his choice will not have been disapproved—despite controlling authority that the debtor's

8

Case 3:09-bk-05337    Doc 631    Filed 05/17/10    Entered 05/17/10 17:12:54    Desc Main
Document      Page 8 of 14

choice *must* be disapproved. *Sloan's Furriers, supra.* This is an egregious injustice that commands special consideration of the need to permit Auerbach's vote to be counted.

*Sloan's Furriers* is particularly instructive because of its emphasis on the analysis that a Court must undertake in order to assess whether a debtor has *attempted* to influence the outcome of trustee selection. In *Sloan's Furriers*, the only evidence that the debtor may have *attempted* to influence the outcome of the trustee selection process derived from the fact that the trustee selected as its counsel the debtor's former personal attorney. The court analyzed this and determined that this was an insufficient basis upon which to conclude the debtor attempted to influence the process. By contrast, the same analysis in the instant case demonstrates that Daily was unabashed in his efforts to influence the outcome. Daily openly acknowledged his efforts to persuade the trustee's office to appoint Mr. Mashburn and even attempted to barter with Auerbach to stipulate to that request. Additionally, Daily's bankruptcy counsel ghost-wrote the pleading for Morgan Lewis in attempting to preclude Auerbach from voting. When the ghost writing was revealed in court, Morgan Lewis readily admitted that the pleading it filed was drafted by debtor's bankruptcy counsel. Morgan Lewis acknowledged to this Court that it was adverse to unsecured creditors and stated that it wanted "the creditors who really do not have significant adverse interests of the nature of [Morgan Lewis']" to "make the decision." (April 27, 2010 hearing) Yet, at the election, despite these statements to the Court and despite its insider and priority status, Morgan Lewis proceeded to vote in Daily's candidate --- without the trustee's office even rendering an objection. Not only is there ample evidence that Daily *attempted* to influence the election, but the record demonstrates that the Debtor successfully picked

9

his own trustee.

The trustee that Auerbach voted for, Jeffrey Golden, is a highly regarded panel trustee who has no relationship with Auerbach, Daily, or any creditor in this case. Mr. Golden is a frequent speaker at bankruptcy forums and a widely published author on bankruptcy law. By telephone conversation and confirming email, Beth Derrick of the trustee's office confirmed to Sam Crocker that based on the information provided by Mr. Golden, her office "would not assert that Mr. Golden is not disinterested." (*See* Email from Beth Derrick to Sam Crocker dated April 22, 2010, attached hereto as Exhibit A.) Mr. Golden is truly neutral and his status as being outside of Tennessee brings an important separation from the coercion that Pinnacle executive, Bill DeCamp, admitted under oath that Daily has applied in this case.[4] Daily's manipulation with Pinnacle was markedly similar to his puppeteering through Morgan Lewis and the other steps he took to influence the outcome of who would be his trustee. When there have already been multiple attempts by Daily to apply influence throughout this case, the need to shelter the trustee selection process from the debtor is heightened.

The Sixth Circuit's formulation that the debtor's "choice will be disapproved *regardless of the qualifications and personal integrity of the man chosen*" is of particular importance. *Sloan's Furriers*, *supra* (emphasis added). The separation of the debtor from the trustee selection process is so sacrosanct that any views of the qualifications or personal integrity of the man chosen may not even enter into the calculus. In

---

[4] Daily artificially created an unneeded used car loan with friends at Pinnacle Bank on the eve of filing his bankruptcy petition, for purposes of fabricating a basis upon which to achieve cram down. Pinnacle executive, Bill DeCamp, testified that Daily called both him and Pinnacle Bank's Chairman to lobby Pinnacle not to sell the loan to anyone. DeCamp Depo., Doc. No. 389-2 at 25:16-24

10

apparent recognition that no one may ever truly know why the debtor sought a trustee candidate, the Court of Appeal acknowledged that the rejection must be automatic --- the choice is disapproved regardless of whom the debtor selected. Thus, the result that Daily has achieved in this case is legally proscribed by black letter law. By employing subterfuge and successfully selecting his own trustee, Daily has moved this case backwards by succeeding in a legal violation and creating a cloud over any resolution of this case.

Somewhere this case went very wrong when the debtor was able to turn attention away from his own influence in trustee selection and instead improperly portray the right of a non-insider, non-priority unsecured creditor to vote as somehow legally untenable. This Court is respectfully requested to observe that none of Daily, Morgan Lewis or the trustee's office, have cited any valid authority precluding Auerbach from voting. Despite all the case law accumulated over the years among the many circuits, they have provided this Court with nothing that even approximates the Sixth Circuit's unequivocal preclusion against the Debtor's influence which Auerbach has provided this Court. Instead, Daily provided this Court with his own incorrect interpretation of a lower court's dicta in *In re Williams*, 277 B.R. 114 (Bankr. C.D. Cal. 2002) and coupled it with ungenerous fear mongering about what Auerbach might do if given the power to vote.[5] This is where Auerbach has provided the Court with a ready resolution by voting for a panel trustee whose appointment would simultaneously refute all of the speculation regarding what Auerbach's vote could entail. Mr. Golden received

---

[5] In fact, all Judge Mund's dicta in *In re Williams* stands for is the unremarkable proposition that where a creditor is either secured or the recipient of a preference, it does not vote.

11

the prestigious Judge Peter Elliott award for honesty and integrity as a leader in the bankruptcy community. (*See* Mr. Golden's resume and two of the articles he has published, attached hereto as Exhibit B.) Auerbach respectfully requests that the Court consider the special circumstances presented by this disputed election and the opportunity they present to bring this case back within the law. To not consider Auerbach's vote would be to permit the Debtor to have selected his own trustee. However, if the Court were to count Auerbach's vote in this one single instance, the only result would be that a neutral panel trustee would be elected.

While Auerbach respectfully disagrees with the Court's ruling regarding Auerbach's ability to vote, Auerbach respects the Court's decision and accordingly does *not* seek a broad ruling that it can vote in any election scenario. Rather, the relief requested herein is narrowly tailored to the present circumstance of the election of Mr. Golden. Auerbach seeks only a ruling that, *in this single circumstance*, Auerbach's vote will be counted so that Mr. Golden will be elected and the Debtor's candidate disapproved. Such special consideration is warranted when the Court has complete certainty as to what the impact of Auerbach's vote would be --- the election of a neutral panel trustee. Therefore, none of the mythical horror scenarios painted by the Debtor, Morgan Lewis or the trustee's office in their opposition to Auerbach's right to vote are applicable in this one special circumstance. All of the speculation by these parties regarding the possible effects of Auerbach's being able to vote is rendered moot by the requested relief. There is one outcome and one outcome only from having Auerbach's vote counted in this past election --- the election of a highly regarded, neutral panel trustee who meets the disinterestedness test.

By granting this single motion, the Court can achieve a win-win for all parties: (i) this case can be brought into conformity with controlling authority that mandates that Daily's candidate be disapproved, and (ii) all of the concerns expressed about Auerbach's ability to vote can be allayed because the Court would only be counting Auerbach's vote in this single circumstance in which the result of the vote is already determined and its impact on the case is irrefutably positive.

Auerbach requests that the Court order that, in this single instance, Auerbach's vote be counted and Mr. Golden serve as trustee.

## **CONCLUSION**

This Court should resolve this election dispute by holding that, in these special circumstances and in the single instance of Auerbach's vote for Mr. Golden, Auerbach's vote should be counted. Appointment of Mr. Golden, a disinterested, highly regarded, panel trustee would permit this case to be administered without the cloud presented by Daily's having influenced the selection of his own trustee. Removal of that cloud is the only way to both resolve the legal violation Daily has achieved and enable the efficient resolution of this case.

The requested relief would bring the case into conformity with controlling authority while at the same time rendering moot all of the speculation presented to this Court regarding what effect Auerbach's ability to vote may have. The requested relief would only count Auerbach's vote in the single circumstance of electing a disinterested panel trustee. Thus, this Court is respectfully requested to consider both the injustice of what has occurred and the tempered request presented by this motion and appoint Jeffrey Golden as trustee.

**WHEREFORE,** Auerbach respectfully requests that this Honorable Court grant this Motion and grant Auerbach all other relief that is just and proper.

Respectfully submitted,

/s/Robert J. Mendes
Robert J. Mendes (rjm@mglaw.net)
C. Daniel Lins (cdl@mglaw.net)
MGLAW PLLC
2525 West End Avenue, Suite 1475
Nashville, Tennessee 37203
615.846.8000
615.846.9000 (fax)

ATTORNEYS FOR AUERBACH
ACQUISITION ASSOCIATES, INC.

## CERTIFICATE OF SERVICE

It is hereby certified that on this the 17th day of May, 2010, a true and exact copy of the foregoing was served via ECF upon all parties requesting electronic service in this case.

/s/Robert J. Mendes
Robert J. Mendes