IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 3:09-bk-05337 |
| GREGORY SCOTT DAILY, ) | Judge Marian F. Harrison |
| ) | Chapter 11 |
| Debtor. ) | |

**AUERBACH'S REPLY TO OBJECTIONS TO MOTION
FOR RESOLUTION OF DISPUTE OVER ELECTION OF CHAPTER 11 TRUSTEE**

Auerbach Acquisition Associates, Inc. ("Auerbach"), for its Reply to Morgan Lewis's Objection (Doc. No. 653) and the Debtor's Response (Doc. No. 658) and the Trustee's Response (Doc. No. 659) to Auerbach's Motion for Resolution of Dispute over Election of Chapter 11 Trustee (the "Motion"), states as follows:

## I. INTRODUCTION

Most distressing to Auerbach has been the Trustee, Mr. Mashburn's, response. It is very difficult for Auerbach to find itself, on the one hand, seeking to protect its legal rights in this important issue while, on the other hand, not wishing to make this matter be about Mr. Mashburn. To Auerbach, this matter should be about Daily and his actions. However, Auerbach is facing a formidable task in trying to make that distinction and, as apparently indicated by the Trustee's response, has been unable to avoid offending the Trustee in the process. For example, Mr. Mashburn correctly points out that Auerbach did, *entirely on its own*, consider Mr. Mashburn as a potential trustee candidate back in September 2009 at the time of the first trustee motion. However, Auerbach chose not to propose Mr. Mashburn to the U.S. Trustee's office for appointment or for election. Instead, Auerbach determined that what was needed for this case to be resolved beyond reproach was a candidate outside of Nashville. What changed had nothing to do

with Mr. Mashburn but everything to do with Daily. What changed was the evidence that emerged regarding Daily's activities with Pinnacle Bank. Auerbach learned that, on the eve of filing his bankruptcy petition, Daily took out an unneeded used car loan from decades long friends at Pinnacle Bank. Auerbach also learned that Daily called his friends at Pinnacle and asked them not to sell that loan to anyone. (Doc. No. 389-2 at 25.) Auerbach learned that Daily's strategy in filing for bankruptcy was to attempt to evade the fraud judgment against him by using his connections in Nashville --- for example by engineering a cram down through his artificially created Pinnacle claim. After Auerbach had to spend seven years to obtain its fraud judgment against Daily, one can imagine how deeply distressing Daily's actions were to Auerbach. Auerbach has admittedly become filled with apprehension regarding every bit of politicking Daily has undertaken or may undertake in the future. This apprehension only became exacerbated by other actions by Daily, such as his multi-million dollar fraudulent conveyances shortly before the State Court action was sent to trial and his filing a declaratory relief action in this bankruptcy case seeking to declare assets to be owned by his wife --- while having his bankruptcy attorney assist in the preparation of his wife's answer to that complaint. The consequence of Daily's actions has admittedly been a heightened level of fear and suspicion regarding Daily's intent to use his connections to evade his judgment --- and a belief that appointment of a trustee candidate from outside Nashville is what is most appropriate in this case.

      Similarly, when Auerbach uses references to Mr. Mashburn as being Daily's "hand-picked trustee," Auerbach is not seeking to disparage Mr. Mashburn but to express its frustration with Daily's success in influencing the election process. Auerbach

2

is admittedly frustrated that its request to the U.S. Trustee's office that a candidate outside of Nashville be considered came to naught, whereas Mr. Mashburn was appointed after Daily requested that Mr. Mashburn be the candidate. Auerbach is openly frustrated that the U.S. Trustee's office filed a brief arguing that Auerbach's vote would be adverse to the interests of creditors --- but the office did not object to the vote of Daily's personal attorney, Morgan Lewis, despite their being an insider, a holder of a priority claim (having been retained post petition), and even lacking the requisite signed proxy. Somehow Auerbach was being viewed as adverse to the interests of the unsecured creditors --- whereas the Debtor was not. All of these events have come together to, admittedly, create a great deal of apprehension among the Auerbach team. Given that Mr. Mashburn filed his own brief, Auerbach thought it was important for it to share with the Court and the Trustee what is going on within the psyche of the Auerbach team and explain the sincerity behind its intentions. For the remainder of this Reply, Auerbach will address the arguments presented by Daily and his counsel, Morgan Lewis.

As Auerbach explains in this brief, Daily and Morgan Lewis' unusual conduct with regards to the election have created serious legal issues for this case. The relief that Daily and Morgan Lewis seek --- that Morgan Lewis' vote be ignored or withdrawn and Mr. Mashburn be permitted to serve as trustee --- comprises certain reversible error. After taking the Court through why this is so, Auerbach's Reply proposes a compromise that can bring this case back into legal conformity and address all of the concerns raised by parties.

Morgan Lewis' and Daily's oppositions boil down to four points. First, they argue

that Daily's having assisted Morgan Lewis in opposing Auerbach's right to vote does not mean that Daily attempted to influence the election. Neither Morgan Lewis nor Daily mention *Sloan's Furriers v. Bradley,* 146 F.2d 757, 759 (6th Cir. 1945), much less attempt to distinguish it. However, they apparently make this argument in order to attempt to take this case outside the domain of *Sloan's Furriers* and its holding that the debtor's candidate is disapproved if the debtor attempted to influence the election. For example, they argue that Daily did not ghost write Morgan Lewis' pleading and was merely being helpful to Morgan Lewis. However, they forget to mention that Daily's influence is also demonstrated by his having been the moving party in arguing that Auerbach's vote would be materially adverse --- despite not having standing to do so. While Auerbach maintains that Daily's efforts to influence the election are transparent, Morgan Lewis' and Daily's arguments --- seeking to insulate Daily from the process --- do not matter anyway. *Sloan's Furriers* mandates the disapproval of the candidate even if debtor's counsel was acting on its own.[1] *Sloan's Furriers* calls for disapproval anytime the debtor's counsel seeks to secure the election --- and there can be no doubt that Morgan Lewis sought to secure the election for Mr. Mashburn *given that Morgan Lewis voted for him and objected to Auerbach's vote*. When Morgan Lewis actually tendered a vote in favor of Mr. Mashburn, they made it impossible for the Court not to disapprove Mr. Mashburn.

Second, Morgan Lewis attempts to justify the U.S. Trustee's office's decision not

---

[1] In *Sloan's Furriers*, the Sixth Circuit held that disapproval *explicitly* extends to a trustee whose election was secured by the activity of the debtor's attorney: "This has been held to include a trustee whose election was secured by the activity of the bankrupt's attorney." *Id., citing In re Rekersdres*, 108 F. 206 (S.D.N.Y. 1901); *In re Sitting*, 182 F. 917 (N.D.N.Y. 1910).

4

to object to Morgan Lewis' vote. These arguments are unavailing since Morgan Lewis does not even deny, much less attempt to address, three of the bases which made their vote objectionable --- namely that Morgan Lewis is an insider, a priority claimant, and did not have a signed proxy. Furthermore, the fact that the U.S. Trustee's office did not object to Morgan Lewis' vote merely provides background upon which this Court may consider the U.S. Trustee's office's decision to, nevertheless, object to Auerbach's vote. Yet, the central point is that Morgan Lewis did vote and, by doing so, Morgan Lewis put this case squarely within the framework of *Sloan's Furriers* and has forced Mr. Mashburn's disapproval.

Third, Morgan Lewis attempts to withdraw its vote in the hope that the Court will therefore not apply Sixth Circuit law mandating that Mr. Mashburn be disapproved. Morgan Lewis argues that, if it did not vote, the result of Mr. Mashburn being the trustee would be the same. Essentially, Morgan Lewis asks the Court to pretend it did not vote and simply leave Mr. Mashburn in on the basis of his having been appointed by the U.S. Trustee's office. However, in so doing, Morgan Lewis ignores the holding of *Sloan's Furriers.* The Sixth Circuit did not say that when the debtor's counsel votes, such vote is merely rejected; the Sixth Circuit stated that the candidate himself becomes disapproved. The Sixth Circuit extended its disapproval beyond the vote and *to the individual* --- regardless of whether there is some other way for that individual to serve as trustee: ("[W]here a bankrupt attempts to influence the election of a trustee *the choice will be disapproved* regardless of the qualifications and personal integrity of the man chosen. . . . This has been held to include a trustee whose election was secured by the activity of the bankrupt's attorney.") *Sloan's Furriers, supra* (emphasis added)

5

Case 3:09-bk-05337 Doc 670 Filed 06/01/10 Entered 06/01/10 11:25:27 Desc Main
Document Page 5 of 19

(internal citation omitted). The Sixth Circuit does *not* state that the debtor's candidate is not disapproved if he happens to be the same candidate that is already serving as trustee. In fact, the Sixth Circuit has offered no exceptions for disapproval. The Sixth Circuit states that the candidate is disapproved "regardless of the qualifications and personal integrity of the man chosen." Far from being able to act as if Morgan Lewis did not vote, the Court is required to react to the activity of the debtor's attorney: "This has been held to include a trustee whose election was secured by the activity of the bankrupt's attorney." *Id., citing In re Rekersdres*, 108 F. 206 (S.D.N.Y. 1901); *In re Sitting*, 182 F. 917 (N.D.N.Y. 1910). As Auerbach observed in its moving papers and no party has contested, Auerbach is aware of no case that contradicts this basic holding which stems from the fact that trustee elections are not the domain of the debtor. This election should have been solely the domain of non-priority, non-insider unsecured creditors. In truth, Daily's and Morgan Lewis' overzealous efforts to control the outcome of this election is what cost Mr. Mashburn his candidacy.

Fourth, Morgan Lewis argues that Auerbach is seeking a motion to reconsider. This is incorrect. Auerbach is not seeking reconsideration of any ruling of the Court. There has never been any ruling on the outcome of any election in this case. Auerbach has properly brought forward how the actions of the debtor and his counsel in this election: (i) mandate the disapproval of Mr. Mashburn and (ii) require a ruling that, in this one single election, where the outcome of Auerbach's vote is known so that all the speculation regarding the impact of Auerbach's vote is remedied, the Court should consider Auerbach's vote and decide the election in favor of Mr. Jeffrey Golden.

Morgan Lewis and Daily similarly argue that, because of the Court's prior ruling,

6

Case 3:09-bk-05337 Doc 670 Filed 06/01/10 Entered 06/01/10 11:25:27 Desc Main Document Page 6 of 19

no election should have been held and Auerbach should not have voted. Morgan Lewis and Daily fail to understand the process of election. The Court does not control the process of election or decide who may or may not vote, the Court resolves objections. The election was called for *before* Daily filed his motion seeking to declare Auerbach as materially adverse to the interests of creditors.[2] Once an election is called, a meeting of creditors must be scheduled and votes and objections are tallied. When objections exist, the results are presented to the Court for determination through a motion to resolve the election --- just as Auerbach has done. Any party may, at the election resolution hearing, request that the Court resolve the election one way or the other based upon the facts and circumstances of the election. This is essential because an appellate court must be presented with an outcome it can enforce. This is why this motion is not a motion to reconsider. The Court has never been presented in this case with an election to resolve, The Court has never been presented for resolution an objection to Auerbach's vote for Mr. Golden and an objection to Morgan Lewis' vote for Mr. Mashburn. The Court has never been presented with the opportunity to determine that either Mr. Golden or Mr. Mashburn has won the election. Importantly, this motion presents the Court with a first opportunity to decide if, by voting for a disinterested panel

---

[2] As the Court may observe, part of the entire problem that has been created in this case stems from the fact that Daily improperly filed his motion asserting that Auerbach was materially adverse before there was even any election to resolve. Daily should have waited until the election had occurred and votes and objections had been tallied before filing any position. By filing his motion prematurely, Daily deprived the Court of its right to consider objections to individual votes in the context of the actual votes. That is also why this is not a motion for reconsideration. This is a motion that seeks to finally bring the election process back into conformity with how it is supposed to proceed. The Court is not reversing itself in any fashion by considering Auerbach's vote in the context of the vote itself --- this has never occurred in this case and yet is precisely what must occur.

7

trustee, Auerbach has remedied all of the concerns expressed about the potential effects of its ability to vote. The Court is now also given the opportunity to assess the U.S. Trustee's office's objection to Auerbach's vote through the prism of the office's unwillingness to object to Morgan Lewis' vote. The Court must also weigh the impact of *Sloan's Furriers* on the activities of the Debtor and Morgan Lewis to preclude Auerbach from voting and thereby influence the election. After weighing all these factors, the Court will determine which of the two candidates presented for election, Mr. Mashburn or Mr. Golden, will be elected. This is not a motion for reconsideration. The Court has never been called upon to determine which of these two trustee candidates will be elected. The Court has never been called upon to determine if Auerbach has negated all of the concerns about the potential impact of its ability to vote by voting for a disinterested panel trustee.

Daily should have waited and permitted the election to proceed unfettered by any influence by him or Morgan Lewis. Instead, Daily *attempted to influence the outcome of the election* by filing his motion *before* there was even an election. This is why Daily's and Morgan Lewis' actions have brought this case squarely within the framework of *Sloan's Furriers*. One can only presume that Daily and Morgan Lewis took the unusual step of moving against Auerbach's vote even *before* the election was held because they thought it would be easier to create concerns about Auerbach's vote outside of the context of an actual vote for an actual candidate. But by engaging in such unusual activity for a debtor and his counsel in an election, they have run afoul of black letter law. When Daily claims that this is a motion for reconsideration, he has the matter completely backwards. This Court has never weighed Auerbach's vote in any election.

8

Case 3:09-bk-05337   Doc 670   Filed 06/01/10   Entered 06/01/10 11:25:27   Desc Main
Document      Page 8 of 19

All that has occurred is that, by filing his motion before there was any election, Daily has influenced the outcome and forced Mr. Mashburn's disapproval. Now that an election has occurred, the Court must evaluate Auerbach's vote in the context of the actual vote itself --- which is precisely what should have occurred from the beginning. This **cannot** be reconsideration because this has never occurred. In fact, by attempting to influence the outcome of the election before the election was even held, Daily has created for the Court an entirely different fact base to weigh and has triggered the application of *Sloan's Furriers* to the result.

Morgan Lewis' and Daily's overzealous actions regarding the election have left the Court no room not to disapprove Mr. Mashburn as trustee. Accordingly, at the hearing, Auerbach will explore a potential compromise. By the time of the hearing, Auerbach hopes to know Mr. Golden's level of interest, if appointed as trustee, in building consensus by hiring Mr. Mashburn and his firm as counsel for the trustee. *Sloan's Furriers* mandates Mr. Mashburn's disapproval as trustee but it does not preclude Mr. Mashburn's being hired as counsel to the trustee. Pursuant to this compromise, Auerbach would waive any concerns it has with regards to Mr. Mashburn and his firm --- which is of course why it is a compromise. The spirit of the compromise to be proposed by Auerbach will be to ensure all interested parties that Mr. Mashburn will be a participant in every aspect of the case and will be a voice heard by the Court in every matter. Such a compromise would bring the case back into legal conformity with Sixth Circuit law while at the same time providing the Debtor and Morgan Lewis with the assurance that Mr. Mashburn will be a constant voice throughout the case.

Auerbach will not know Mr. Golden's reaction to such potential compromise until

the hearing. Auerbach also acknowledges that, in order for this compromise to be workable, it must be something that Mr. Golden himself embraces as a tool with which to build consensus. The essence of the compromise is that the Court would now have two individuals, Mr. Mashburn and Mr. Golden, to hear from with regards to every issue in the case. The Court, in all events, is the ultimate decision maker with regards to every aspect of the case --- however, with such compromise, the parties will know that the Court will have input from both Mr. Golden and Mr. Mashburn, in addition to all the parties in the case. Auerbach hopes that this compromise will be embraced by all parties as a good faith attempt to bridge the divide in what the Court has described as essentially a two party dispute.

## II. ARGUMENT

**A.** **Morgan Lewis' Vote**

Morgan Lewis spends a considerable amount of time arguing that its vote was not objectionable because the Debtor supposedly did not influence Morgan Lewis' vote. However, Morgan Lewis does not address the holding of *Sloan's Furriers* that the activity of debtor's counsel on its own in securing an election for a candidate mandates the disapproval of that candidate. Morgan Lewis entirely misses the point that its having voted in the first instance mandates the disapproval of its candidate. Thus, all of Morgan Lewis' arguments as to why its vote was not objectionable are inconsequential. It is the very fact that Morgan Lewis voted that mandates Mr. Mashburn's disapproval.

Moreover, Morgan Lewis does not even address for this Court three of the bases upon which Morgan Lewis' vote was objectionable: (i) it did not have a signed proxy, (ii) it is a priority claimant, and, most importantly, (iii) as Debtor's counsel, it is an insider.

10

Thus, this Court now has three uncontroverted bases demonstrating that Morgan Lewis' vote should have been objected to by the U.S. Trustee's office --- but was not.

While ignoring the holding of *Sloan's Furriers* that the election activity of debtor's counsel is sufficient on its own to mandate Mr. Mashburn's disapproval, Morgan Lewis attempts to insulate the debtor from assertions that he influenced Morgan Lewis. Morgan Lewis does this in apparent recognition that *Sloan's Furriers* requires that any attempt by the debtor to influence the election would mandate disapproval of Mr. Mashburn. Yet, these arguments, even if taken as true, would achieve nothing because, even if Morgan Lewis did act on its own in voting for Mr. Mashburn, that is more than sufficient to require disapproval.

First, Morgan Lewis claims that the Debtor did not ghost write its pleading but was merely being helpful.[3] However, at the hearing, in order to explain why the footer of debtor's bankruptcy counsel appeared on Morgan Lewis' actual filed pleading, Morgan Lewis admitted that it received a document prepared by Debtor's counsel. Specifically, Morgan Lewis stated:

> First, I'd be glad to acknowledge that representing one of the attorneys for Mr. Daily, I got a Word document from another attorney for Mr. Daily.

Although at the hearing, Morgan Lewis acknowledged that it got a *document* from Debtor's counsel, Morgan Lewis now tries to characterize the document it received from Debtor's counsel as a *template*.[4] (Doc. No. 653 at 2.) However, any attempt to

---

[3] Morgan Lewis also makes the remarkable claim that it could have equally asked Auerbach for the same help in drafting its opposition to Auerbach's right to vote. (Doc. No. 653 at 2.)

[4] Auerbach has requested that Daily and Morgan Lewis present all written communications regarding the drafting of the pleading to Auerbach and the Court and has, as of the writing of this brief, received no response.

11

distinguish these concepts is beside the point, because the Sixth Circuit held in *Sloan's Furriers* that a mere *attempt* by Daily to influence the election results in Mr. Mashburn's disapproval.

Second, Morgan Lewis argues that when it admitted it was adverse, it only meant that it was adverse to Auerbach and not the interests of other creditors. However, even if the Court were to accept this as true, it does not change the fact that Morgan Lewis is Debtor's counsel. As Debtor's counsel and the holder of a priority claim, it is deemed adverse to the interests of unsecured creditors. That is why Morgan Lewis' decision to vote mandates Mr. Mashburn's disapproval.

Third, Morgan Lewis states at page 4 that, "In reality, the attorney who represented Morgan Lewis at the trustee election (Mr. Houston) has had no communication with the Debtor or his bankruptcy counsel regarding any aspect of this case, much less the election of a Chapter 11 Trustee." However, compare that to Morgan Lewis' admission at page 2 that Morgan Lewis received a template to file from Debtor's bankruptcy counsel. If Morgan Lewis intends to say that a different lawyer within in its Nashville law firm was in charge of communicating with the Debtor from the lawyer who actually tendered the vote for Morgan Lewis, this argument is unavailing because those two lawyers are at the same firm and the knowledge and actions of a firm's partners are imputed to the firm. Apparently the only reason why Morgan Lewis even attempts to draw this arbitrary distinction is because it recognizes that even an *attempt* by Daily to influence an election results in Mr. Mashburn's disapproval. However, even if the Court were to ignore the fact that both lawyers were part of the same law firm, it would not matter because *Sloan's Furriers* held that the activity of the

12

Case 3:09-bk-05337   Doc 670   Filed 06/01/10   Entered 06/01/10 11:25:27   Desc Main
Document      Page 12 of 19

debtor's counsel alone in an election is sufficient to mandate the candidate's disapproval.

Neither Morgan Lewis nor Daily explain how the Court could conclude that Daily did not attempt to influence the election given that it was Daily himself that moved to have Auerbach prevented from voting even before the election was held. Daily also does not deny that he offered to stipulate to trustee appointment if Auerbach would join in his request to the U.S. Trustee's office that Mr. Mashburn be the trustee. Daily only says that: "If any such discussion took place, it had to be between counsel for the Debtor and Auerbach." (Response at 4.)

While Auerbach maintains that none of these arguments that the Debtor did not influence Morgan Lewis or the election are availing, it does not matter because just the activity of Debtor's counsel on its own to influence an election mandates the candidate's disapproval. Thus, the Court is faced with the peculiar instance of an election in which the U.S. Trustee's office objected to Auerbach's ability to vote, but the U.S. Trustee's office did not object to the vote of Debtor's counsel. In apparent recognition of the harm it has done by voting, Morgan Lewis retreats to its position that the Court should simply pretend that it did not vote and leave Mr. Mashburn as Trustee.

B. **Morgan Lewis' Request that the Court Ignore its Vote**

Morgan Lewis asks this Court to ignore its vote and offers to withdraw it. Morgan Lewis argues to the Court that the easiest resolution is to discount both votes and leave in their candidate, Mr. Mashburn. However, Morgan Lewis cannot overcome the fact that this is an outcome explicitly disapproved of by the Sixth Circuit. *Sloan's Furriers* does not state that when a debtor's counsel votes, the vote is merely discounted.

13

*Sloan's Furriers* states that when debtor's counsel attempts to secure an election, the *candidate* becomes disapproved.

None of the three oppositions filed address for the Court the fact that *Sloan's Furriers* extends its disapproval beyond the vote and directly to the candidate sought by the debtor or its counsel. As much as Morgan Lewis wishes it could turn back the clock and prevent the record from reflecting its actions as an insider, it cannot. The Sixth Circuit does not state that the candidate is not disapproved if he happens to be the same candidate that already holds the position. The Sixth Circuit states that the candidate is disapproved "regardless of the qualifications and personal integrity of the man chosen." *Sloan's Furriers, supra.*

Despite all of Morgan Lewis' and Daily's attempts to ask this Court to ignore the fact that Morgan Lewis did vote and to ignore the evidence demonstrating Daily's influence, these arguments fail because Morgan Lewis did vote. Moreover, none of the three opposition briefs even mention *Sloan's Furriers,* much less distinguish it, and so this Court has been provided with no basis upon which to ignore controlling Sixth Circuit law.

C. **Morgan Lewis' and Daily's Assertion That It Was Improper for Auerbach to Vote**

Morgan Lewis and Daily assert that it was improper for Auerbach to vote in the election given this Court's ruling on material adversity. They are incorrect. The election was requested by Auerbach *before* Daily filed his motion seeking to prevent Auerbach from voting. The election was going forward with or without Auerbach's participation. Auerbach had every right to vote and the U.S. Trustee's office correctly did not seek to

14

prevent Auerbach from voting. The Court does not prevent parties from voting, the Court simply evaluates elections, votes, and objections and determines the appropriate outcome.

In order for an appellate court to have a complete record of what the outcome of the election would have been, Auerbach had to be permitted to vote. It is now this Court's task to determine how to weigh the objections and the circumstances of the election and decide the election. Part of that evaluation includes this Court's ability to evaluate if Auerbach has remedied the concerns raised about its vote by only voting for a disinterested panel trustee. That is why the Court may consider Auerbach's vote and decide that Mr. Golden shall serve as trustee.

Similarly, despite assertions to the contrary, Auerbach's motion is not a motion for reconsideration. This Court has never been asked to evaluate an election, weigh the votes, objections, and circumstances, and make an election determination. The Court has never been called upon to determine if Auerbach has negated all of the concerns about the impact of its ability to vote by voting for a disinterested panel trustee. That is what this motion does. If Morgan Lewis' and Daily's arguments were correct, there would never be any resolution to the election and the appellate court would be deprived of its right to reach a determination of the appropriate outcome. Morgan Lewis and Daily would have this Court prevent an election from occurring and prevent Auerbach from voting --- thereby tripping the deadline for when an election must have occurred and thereby undermining the appellate court's mandate of oversight.

Part of the core problem that has been created in this case stems from the fact that Daily improperly filed his motion asserting that Auerbach was materially adverse

15

Case 3:09-bk-05337 Doc 670 Filed 06/01/10 Entered 06/01/10 11:25:27 Desc Main
Document Page 15 of 19

*before* there was even any election to resolve. Thus, Daily *attempted to influence the outcome of the election* --- instead of waiting for an election to proceed unfettered by his influence and then objecting to any impropriety he observed. This is why Daily's and Morgan Lewis' actions have brought this case squarely within the framework of *Sloan's Furriers*. Daily should have waited until the election had occurred and votes and objections had been tallied before filing any position. By filing his motion prematurely, Daily sought to deprive the Court of its right to consider objections to individual votes in the context of the actual votes. One can only presume that Daily took that unusual step because he feared that, if the Court evaluated Auerbach's vote in the context of the actual candidate for whom Auerbach voted, that would undermine Daily's speculation about the negative impact of Auerbach's vote. Nevertheless, this Court has yet to perform its essential function of evaluating votes and objections within the context of the actual candidates. That is why this is not a motion for reconsideration. This is a motion that seeks to finally bring the election process back into conformity with how the process is supposed to proceed. The Court is not reversing itself in any fashion by considering Auerbach's vote in the context of the vote itself --- the Court has never determined if Auerbach's actual vote has remedied any concerns. Consideration of Auerbach's vote in the context of for whom Auerbach voted is precisely what remains to be done in this case.

The process that Auerbach proposes through this motion is precisely what is supposed to occur. An election was duly called, votes and objections were tendered, and now the Court is charged with determining the outcome of the election based upon the circumstances presented by the election. The only impact of Daily's having

16

prematurely filed his motion is that the Court must now consider the implications of the Debtor's attempt at influencing the election, the fact that Debtor's counsel did subsequently vote at the election, and the holdings of *Sloan's Furriers*.

The Court may and should determine that Auerbach has negated all of the concerns about the impact of its ability to vote by voting for a disinterested panel trustee. The Court may and should determine that, after weighing the efforts that Auerbach has undertaken to address any concerns regarding the impact of its vote, and after weighing the damage to Mr. Mashburn's candidacy that both Daily and Morgan Lewis have inflicted, Mr. Golden is elected.

### III. CONCLUSION

By filing his motion prior to an election and not permitting the election to first proceed unfettered of his or his counsel's influence, Daily has himself irreparably damaged Mr. Mashburn's candidacy. The resolution of this motion is essential because the election, votes, and objections must be resolved and the appellate court must be provided with an outcome to review.

Apparently Morgan Lewis and Daily have come to realize that both of their actions have placed this case squarely within the domain of *Sloan's Furriers*. Accordingly, they ask this Court to ignore Morgan Lewis' vote and ignore the Debtor's attempt to influence the election. Morgan Lewis and Daily want the Court to essentially pretend that none of this happened in order to move this case outside of the framework of *Sloan's Furriers* and thereby leave Mr. Mashburn in on the basis of his having been appointed by the U.S. Trustee's office. Morgan Lewis and Daily thereby ask this Court to ignore black letter law that looks to the candidate himself and disapproves that

17

individual.

The circumstances of this election provide the Court with the ability to bring this case back into legal conformity and simultaneously achieve a just cause --- election of a disinterested panel trustee. An election was properly called and its outcome must be determined by the Court. The Court must now, for the first time, consider Auerbach's vote in the context of the candidates themselves and what transpired in this election. Votes are considered in the context of an election --- not some vacuum of speculation. If Auerbach's vote is considered in this one election, all of the concerns about the implications of Auerbach's vote will be rendered moot because the outcome is known. The only result will be the election of a disinterested panel trustee. Thus, all of the concerns expressed regarding the potential impact of Auerbach's vote have been addressed by the vote for Mr. Golden. By determining that Mr. Golden may serve as trustee, the Court brings this case back into conformity with Sixth Circuit law and, at the same time, addresses all of the speculation raised regarding what Auerbach's vote might have entailed.

Finally, as explained above, Auerbach will explore a potential compromise at the hearing. The success of this compromise will depend upon Mr. Golden's level of interest in building a consensus among the parties --- and this will be known by the time of the hearing. Such a compromise would bring the case back into legal conformity while at the same time providing the Debtor and Morgan Lewis with the assurance that Mr. Mashburn will be a constant voice throughout the case. Regardless of Auerbach's ultimate success in offering this compromise, the law requires Mr. Mashburn's disapproval as a consequence of Daily's and Morgan Lewis' actions. However,

18

Auerbach is hopeful that this compromise will be achievable.

**WHEREFORE,** Auerbach respectfully requests that this Honorable Court grant this Motion and grant Auerbach all other relief that is just and proper.

Respectfully submitted,

/s/Samuel K. Crocker
Samuel K. Crocker
Suite 2720, Renaissance Tower
611 Commerce Street
Nashville, TN 37203
615-726-3322 – Telephone
615-726-6330 – Facsimile
skctrustee@aol.com

- and -

/s/Robert J. Mendes
Robert J. Mendes (rjm@mglaw.net)
C. Daniel Lins (cdl@mglaw.net)
MGLAW PLLC
2525 West End Avenue, Suite 1475
Nashville, Tennessee 37203
615.846.8000
615.846.9000 (fax)

ATTORNEYS FOR AUERBACH
ACQUISITION ASSOCIATES, INC.

## CERTIFICATE OF SERVICE

It is hereby certified that on this the 1st day of June, 2010, a true and exact copy of the foregoing was served via ECF upon all parties requesting electronic service in this case.

/s/Robert J. Mendes
Robert J. Mendes

19

Case 3:09-bk-05337   Doc 670   Filed 06/01/10   Entered 06/01/10 11:25:27   Desc Main
Document      Page 19 of 19